O

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### LAREDO DIVISION

| | | |
|---|---|---|
| **RAUL GONZALEZ, JR.,** | § | |
| **Petitioner,** | § | |
| v. | § | **Civil Action No. L – 05 – cv – 236** |
| | § | **Crim. Action No. L – 04 – cr – 1213** |
| **UNITED STATES OF AMERICA,** | § | |
| **Respondent.** | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Raul Gonzalez, Jr.'s ("Gonzalez") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, [Dkt. No. 1], and United States' Response and Motion to Deny Relief to Petitioner's Section 2255 Motion [Dkt. No. 12].[1]  After considering the motions, submitted evidence, and applicable law, Gonzalez's motion is DENIED in part; the Government's motion is GRANTED in part; and an evidentiary hearing is scheduled to address an unresolved issue.

## I.  BACKGROUND

On May 16, 2004, Gonzalez entered the U.S. Border Patrol Checkpoint near Hebronville, Texas driving a tractor-trailer. *See* Pre-Sentence Investigation Report ("PSR") ¶ 8.  After the canine alerted to possible contraband, and after a search of the truck and trailer was conducted, agents discovered inside the trailer approximately 1,476.44 kilograms of marijuana, *Id.*, and 23.58

---

[1]  "Dkt. No." refers to the docket number entry for the Court's electronic filing system.  The Court will cite to the docket number entries rather than the title of each filing.  "Dkt. No." will be used to refer to filings on case number L-05-cv-236.  "Crim. Dkt. No." refers to the docket entries in criminal case number L-04-cr-1213.

1

kilograms of cocaine, *Id.* ¶ 13.  Agents subsequently arrested Gonzalez and turned him over to Drug Enforcement Agency ("DEA") officials.  *Id.* ¶ 8.

The following day DEA agents interviewed Gonzalez.  Gonzalez claimed he borrowed the tractor-trailer from his employer to empty the septic tank in his father's ranch.  PSR ¶ 9.  After contacting Gonzalez's employer, agents discovered Gonzalez did not have permission to use the tractor-trailer.  *Id.* ¶ 10.  Agents also contacted the employee who drives the tractor-trailer on a daily basis.  He stated that on May 16, 2004, he returned the tractor-trailer to the company yard after a delivery and that the trailer had been empty.  *Id.* ¶ 11.

On August 3, 2004, the Grand Jury, through a superseding indictment, charged Gonzalez with two counts.  Count one charged Gonzalez with knowingly and intentionally possessing with the intent to distribute a quantity in excess of 1,000 kilograms of marijuana.  [Crim. Dkt. No. 6 at 1].  Count two charged Gonzalez with knowingly and intentionally possessing with the intent to distribute a quantity in excess of five kilograms of cocaine.  *Id.* at 2.  Both counts were in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).  *Id.* at 1-2.

After a two day trial, a jury found Gonzalez guilty on both counts of the indictment.  [Crim. Dkt. No. 34].  Subsequently, on December 15, 2004, Judge Keith P. Ellison sentenced Gonzalez to 151 months incarceration, followed by five years of supervised release.  [Crim. Dkt. No. 41].  The Clerk of Court entered judgment on February 1, 2005.  [Crim. Dkt. No. 44].

On December 7, 2005, Gonzalez filed the instant motion.  [Dkt. No. 1].  After reviewing Gonzalez's motion, the Court concluded an answer was needed.  The Court therefore ordered the United States of America ("the Government") to respond to Gonzalez's motion.  [Dkt. No. 6].  The Government responded and moved the Court to deny Gonzalez's motion.  [Dkt. No. 12].  Gonzalez

then filed objections to the Government's response and evidence, and submitted his own affidavit and that of his father and sister.  [Dkt. No. 13 at 4, 5, 6].

## II. DISCUSSION

Under Title 28, United States Code, Section 2255 a federal prisoner who claims that his "sentence was imposed in violation of the Constitution or laws of the United States . . . or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255.  Upon the filing of such a petition, the sentencing court must order a hearing to determine the issues and findings of fact "[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." *Id.*

It appears Gonzalez meets the threshold requirements of section 2255 relief.  Gonzalez is a federal prisoner currently incarcerated in Three Rivers, Texas.  [Dkt. No. 1 at 1].  In his motion Gonzalez alleges he is being held in violation of the Constitution and laws of the United States based on his counsel's ineffectiveness.  Particularly, Gonzalez avers his trial counsel, Adolfo Alvarez ("Alvarez"):  (1) did not object to the PSR on several grounds; (2) failed to argue Gonzalez's role in the offense was minor; (3) coerced Gonzalez into proceeding to trial rather than pleading guilty; (4) caused Gonzalez not to receive credit for acceptance of responsibility; and (5) caused Gonzalez not to qualify for a safety valve sentencing downward departure.  [Dkt. No. 2 at 3-5].  Before determining whether Gonzalez is entitled to a hearing on any of his claims, the Court will first set forth the applicable case law to measure an ineffective assistance of counsel claim and under the guidance of such law will address Gonzalez's allegations.

3

### A.  Ineffective assistance of counsel under *Strickland v. Washington*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant "reasonably effective assistance" of counsel.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to obtain post-conviction relief due to ineffective assistance of counsel, a defendant must show (1) that counsel's representations fell below an objective standard of reasonable service, and (2) that this deficient performance prejudiced the defense such that the outcome of the trial or criminal proceeding would have been different.  *Id.* at 687-91, 694.  A court must, of course, indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence or that, under the circumstances, the challenged action was sound trial strategy.  *Gray v. Lynn*, 6 F.3d 265, 268 (5th Cir. 1993); *Ricalday v. Procunier*, 736 F.2d 203, 206 (5th Cir. 1984).

In the case at bar, to determine whether Alvarez's performance fell below an objective standard of reasonable service that prejudiced Gonzalez, the Court will first entertain Gonzalez's argument that his counsel was ineffective in failing to make certain objections to the PSR.

### B.  Objections to the Presentence Investigation Report claims

Gonzalez alleges his attorney failed to object to the PSR.  He claims Alvarez (1) failed to object to the PSR to perfect the record for appeal; (2) failed to object to the PSR that Gonzalez qualified for a safety valve two level downward sentencing departure; and (3) failed to object to the PSR that Gonzalez qualified for a minor role two level downward sentencing departure.  [Dkt. No. 2 at 3].

Gonzalez's initial allegation insinuating his attorney did not object to the PSR is without merit.  Although not very scholarly, the record shows Alvarez did in fact file written objections to the PSR.  *See* PSR at 17.  Not only did Alvarez file written objections, during sentencing, counsel

4

unsuccessfully argued before Judge Ellison that Gonzalez should be sentenced to less time than that recommended by the guidelines.  [Crim. Dkt. No. 75 at 5-6].  Because Alvarez did in fact object to the PSR and because counsel made other arguments at the sentencing hearing, Gonzalez did not meets his burden of showing that Alvarez's performance was deficient.  Accordingly, the Court need not proceed to the prejudice prong on this claim since Gonzalez failed to satisfy the first *Strickland* prong.  *See United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000)("A court need not address both components of an ineffective assistance of counsel claim if the movant makes an insufficient showing on one."); *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995)(same).

The Court addresses Gonzalez's safety valve allegation in more detail below.  *See infra* Part II.D.  The minor participant contention is addressed in the section that follows.

### C.  Minor participant eligibility claims

Gonzalez next argues Alvarez was ineffective for failing to object to the PSR that he qualified for minor participant status, [Dkt. No. 2 at 3], and for failing to argue that Gonzalez was at best a minor participant, *Id.* at 4-5.[2]  Both allegations miss the mark.

Section 3B1.2 of the United States Sentencing Guidelines allows for a two level reduction in a defendant's total offense level if the defendant was a "minor participant" in the offense for which the defendant is being sentenced.  U.S. SENTENCING GUIDELINES MANUAL § 3B1.2(b) (2004).  "A downward adjustment under section 3B1.2 is generally appropriate only where a defendant was '*substantially less culpable* than the average participant.'"  *United States v. Brown*, 54 F.3d 234, 241

---

[2] The Court has combined these two allegations – (1) counsel's failure to <u>object</u> to the PSR that Gonzalez qualified for minor role status, and (2) counsel's failure to <u>argue</u> for minor role status – because both allegations are interrelated.  In addressing the latter the Court will dispose of the former.

(5th Cir. 1995)(quoting *United States v. Buenrostro*, 868 F.2d 135, 138 (5th Cir.), *cert. denied*, 495 U.S. 923 (1990)). "The defendant bears the burden of proving that his role in the offense was minor or minimal." *United States v. Atanda*, 60 F.3d 196, 198 (5th Cir. 1995).  In making the determination of whether a defendant's participation was minor or minimal, the court must take into account the broad context of the defendant's crime. *Id.*

Gonzalez claims the evidence shows his role in the offense was minor.  He alleges someone recruited him to drive a single load of marijuana through the checkpoint, there was no mention of cocaine, and that he did not have a managerial or supervisory role in the offense.  [Dkt. No. 2 at 5].  Gonzalez interprets his allegations to mean that he played a minor role in the offense.  Case law, however, does not support Gonzalez's interpretation.

In *Buenrostro*, the Fifth Circuit held the district court had not committed clear error in refusing to award a section 3B1.2 reduction to a one-time courier of heroin who performed the task after being asked to do so by some men he had just met at a bar.  868 F.2d at 137-38.  The Court further enumerated:

> [E]ven if the defendant were purely a courier having no knowledge of the other aspects of the drug-dealing operation, the defendant might nonetheless be a highly culpable participant in the operation. A courier who willingly undertakes illegal transit without asking many questions is especially valuable to a criminal organization. When police apprehend a studiously ignorant courier, the organization can rest comfortably, knowing that its other operations remain hidden from the law.

*Id.* at 138.

In light of Fifth Circuit precedent, Gonzalez's minor participant argument fails.  It fails because the Fifth Circuit has considered and rejected the argument Gonzalez now attempts to advance – that courier status stemming from a single drug smuggling transaction done in ignorance

6

of its contents qualified a defendant for a minor role downward sentencing adjustment.  *See United States v. Lujan-Sauceda*, 187 F.3d 451, 452 (5th Cir. 1999)(finding that neither defendant's status as first time offender nor his claim to be mere courier required an adjustment for minor participant status); *Buenrostro*, 868 F.2d at 138-39; *see also United Sates v. Granados-Vaquiz*, No. C-04-670, 2006 U.S. Dist. LEXIS 44126, at *16 (S.D. Tex. June 14, 2006)(explaining that even if defendant had obtained an agreement from the government to recommend minor role reduction, the court would not have followed that recommendation in light of *Lujan-Sauceda* and *Buenrostro*). Moreover, Gonzalez has produced very little in connection with his motion to satisfy his burden of establishing that he had a minor or minimal role in the offense.  *Atanda*, 60 F.3d at 198.

Because Gonzalez's minor role argument has been rejected by the Fifth Circuit, Alvarez cannot be faulted for failing to object or to move for a downward adjustment on this ground.  *See Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995)("Counsel cannot be deficient for failing to press a frivolous point.").  Under these set of circumstances, Gonzalez has not shown his counsel's conduct fell below an objective standard of reasonable service.  *See Lujan-Sauceda*, 187 F.3d at 452; *Sones*, 61 F.3d at 415 n.5; *Atanda*, 60 F.3d at 198; *Buenrostro*, 868 F.2d at 138-39.   Because Gonzalez failed to satisfy the first *Strickland* prong, it is unnecessary to consider prejudice.  *Stewart*, 207 F.3d at 751; *Amos*, 61 F.3d at 348.  Accordingly, Gonzalez is not entitled to relief on this claim.

### D.  Safety valve issues

Gonzalez also claims Alvarez was deficient because Alvarez did not object to the PSR that Gonzalez qualified for a safety valve two-level downward departure, [Dkt. No. 2 at 3], and that his counsel caused him not to qualify for safety valve, *Id.* at 4.  The Court disposes the first allegation as it addresses and rejects the second.

The United States Sentencing Guidelines' "safety valve" provision permits a court to issue a sentence below the mandatory minimum if the defendant meets five criteria. *United States v. Ridgeway*, 321 F.3d 512, 515 (5th Cir. 2003). To succeed on this allegation a defendant like Gonzalez must demonstrate: (1) he does not have more than one criminal history point; (2) he did not use violence or threats of violence or posses a weapon during the offense; (3) his offense did not result in death or serious bodily injury to any person; (4) he was not an organizer or other major participant in the offense; and (5) that not later than the time of the sentencing hearing, he has truthfully provided to the government all information and evidence he has concerning the offense. *Id.* (citing U.S. Sentencing Guidelines Manual § 5C1.2.).

The Court focuses on the fifth criterion. Gonzalez, in his section 2255 memorandum, alleges "he was defriefing [sic] . . . with a D.E.A. AGENT out of the Laredo sector, and was providing substantial assistance in the prosecution of others. . . . [and that Alvarez] deliberately derail [sic] any efforts by the Pettioner [sic] to continue his cooperation with government." [Dkt. No. 2 at 4]. This contention is unsubstantiated.

Gonzalez's allegation is unsupported by the current record. Alvarez, in his affidavit, states, "Gonzalez was aware he was safety valve eligible . . . . He [however] never met with a D.E.A. agent to provide substantial assistance. The only meeting he had was with agents during his arrest in which he repeatedly denied any involvement in drug trafficking." [Dkt. No. 11, Ex. 2 at 1]. Alvarez elaborates, "Gonzalez did not qualify for safety valve because he elected to go to trial and decided not to meet with federal agents to discuss his participation in the crime as required by law." *Id.* The PSR supports counsel's affidavit that Gonzalez's sole interview with D.E.A. agents occurred after his arrest and that Gonzalez denied any involvement in the offense. The PSR states,

8

> On May 17, 2004, Drug Enforcement Agency officials interviewed the defendant. The defendant stated that on May 16, 2004, he borrowed a tractor trailer from his employer . . . . He stated that he used it to empty the septic tank at his father's ranch . . . . He further stated that he drove to a disposal site . . . to dispose the waste.

PSR ¶ 9.  It is further noted Gonzalez had plenty of time after the Government submitted Alvarez's affidavit to rebut the same and to elaborate on the specifics of his allegation.  After Alvarez's affidavit was filed, Gonzalez submitted his own affidavit, [Dkt. No. 13, at 4], but rather than expand on how his counsel supposedly derailed his cooperation with the government "the Court finds that [Gonzalez's] affidavit is silent regarding the issue of whether he had a debriefing interview with the Government and what transpired during that session."  *Robaina v. United States*, No. EP-05-CA-0003, 2006 U.S. Dist. LEXIS 9271, at *28 (W.D. Tex. Feb. 27, 2006).  Based on the foregoing, Gonzalez has not shown nor has he provided sufficient facts to substantiate his allegation that Alvarez deliberately derailed his continued cooperation with the government which prevented him from qualifying for safety valve.  *See United States v. Miller*, 179 F.3d 961, 964 (5th Cir. 1999)("[A] party seeking to invoke the safety valve bears the burden of ensuring that he [or she] has provided all the information and evidence regarding the offense to the Government." (quotations and citation omitted)); *United States v. Flanagan*, 80 F.3d 143, 146 (5th Cir. 1996)("[T]he party seeking the adjustment in the sentence is the party that has the burden of proving the facts to support the adjustment." (citation omitted)); *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993)(explaining conclusory allegations on critical question do not raise constitutional issue).  Therefore, Gonzalez is not entitled to relief on this claim.

### E.  Coercion allegation

Gonzalez next claims, in his petition, that Alvarez coerced him into proceedings to trial where the evidence was overwhelming because counsel was protecting the interest of the owners of the drugs Gonzalez was caught smuggling.[3]  [Dkt. No. 2 at 3].  Gonzalez provides no facts in support of this blanket allegation, and his claim fails for this reason alone.  *Pineda*, 988 F.2d at 23 (explaining conclusory allegations on critical question do not raise constitutional issue); *see In re Grand Jury Subpoena*, 419 F.3d 329, 336 (5th Cir. 2005)(stating allegations in pleadings are not evidence); *Matthews v. United States*, 533 F.2d 900, 901 (5th Cir. 1976)(explaining coercion claim was supported by third party's affidavit).

Attempting to save this allegation, in his response to the Government's filing that Gonzalez's allegation is conclusory and unsupported, Gonzalez claims he "is not basing his claim upon conclusory state of mind but rather urging this Court to conduct an evidentiary hearing to flush out the truth . . . ."  [Dkt. No. 13 at 2].  This Court does not, however, "sanction fishing expeditions based on petitioner's conclusory allegations."  *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997).  Because Gonzalez has failed to identify, with specifics, his counsel's alleged coercion, his argument fails.

### F.  Acceptance of responsibility issues

Lastly, Gonzalez claims Alvarez caused him not to qualify for an acceptance of responsibility three-level downward sentencing departure.  [Dkt. No. 2 at 3].  An acceptance of responsibility "adjustment is not intended to apply to a defendant who puts the government to its burden of proof

---

[3] "Coercion" is defined as "compulsion by physical force or threat of physical force." BLACK'S LAW DICTIONARY 275 (8th ed. 2004).

at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S. SENTENCING GUIDELINES MANUAL § 3E1.1 cmt. n.2 (2004); *United States v. White*, 869 F.2d 822, 826 (5th Cir. 1989)(per curiam)("A defendant who puts the government to its proof by challenging factual guilt may find it difficult, after conviction, to persuade a district court that he is entitled to [an acceptance of responsibility] reduction.").

Here, although Gonzalez was found guilty by a jury, Gonzalez makes several allegations in his petition and submitted affidavits, contending his counsel did not inform him that before trial the Government had offered a plea agreement.  In his affidavit, Gonzalez alleges he "never wanted to go trial[;]" that he always wanted to plead guilty; that "Alvarez never told me about what the Government offered, but kept it to himself to protect the people who paid him to represent me." [Dkt. No. 13 at 4].  Gonzalez also provided the affidavits of his father and sister.  Those affidavits state:

> [Gonzalez] never wanted to go to trial. He always wanted to plead guilty. Counsel Alvarez would not listen to him. Alvarez insisted that . . . Gonzalez, Jr. proceed to trial, because he was protecting the interests of . . . the owners of the drugs. . . . Alvarez never disclosed that an offer for a plea agreement was made by the Government. Alvarez withheld that information.

*Id.* at 5 & 6.

The evidence submitted by the Government conflicts with Gonzalez's evidence.  In his affidavit, Alvarez declared,

> Mr. Gonzalez was aware he . . . could receive 3 points for acceptance of responsibility and could qualify for a 5K downward departure for substantial assistance to the government because this was offered by the government, <u>relayed</u> to Mr. Gonzalez, and the plea offer was <u>rejected</u> by Mr. Gonzalez because he repeatedly claimed his innocense [sic].

[Dkt. No. 11, Ex. 2 at 1](emphasis added).

11

In this case, the Court cannot determine on the basis of the available record whether Alvarez withheld the Government's proposed plea offer from Gonzalez.  On the one hand, Gonzalez has provided sworn testimony that the plea offer was not relayed to him.  On the other, Alvarez claims, in his sworn affidavit, that the plea agreement was relayed to Gonzalez and that Gonzalez rejected the offer because he claimed his innocence.  Assuming, without deciding, that Gonzalez is telling the truth, meaning Alvarez did in fact withhold the Government's offer as Gonzalez alleges, then that amounts to deficient performance.  *Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir. 1995)("[F]ailure of trial counsel to inform the defendant about a government plea offer amounts to ineffective assistance of counsel." (citations omitted)).  Of course, the converse is also true. Assuming Gonzalez is being untruthful, then Alvarez's performance cannot be faulted.  However, the cold record does not reveal who of the two is being truthful.  Thus, the Court is unable resolve the issue at this juncture.

Similarly, the Court cannot determine on the basis of the current record whether Gonzalez can establish prejudice.  Had he pled guilty, it is reasonable to conclude he would have received a lesser sentence under a favorable agreement with the Government.  *See United States v. Leza*, No. C-05-490, 2007 U.S. Dist. LEXIS 8987, at *15 n.5 (S.D. Tex. Feb. 8, 2007)(explaining petitioner might have received lesser sentence had she pleaded guilty rather than go to trial and thus there was potential that she suffered prejudice); *United States v. Ridgeway*, No. 3-00-CV-1608-P, 2001 U.S. Dist. LEXIS 5913, at *14 (N.D. Tex. Feb. 6, 2001)("Rather than speculate whether the district court would have departed below the statutory minimum punishment had movant pled guilty, this determination can be made by the district judge [during an evidentiary hearing]."); *see also United States v. Grammas*, 376 F.3d 433, 439 n.5 (5th Cir. 2004)("Had [petitioner] pleaded guilty, he would

12

not have gone to trial. Should the district court find that [petitioner] would have pleaded guilty, [petitioner] should not then be deprived the [acceptance of responsibility] reduction on the sole ground that he actually went to trial."); *United States v. Day*, 285 F.3d 1167, 1172 (9th Cir. 2002)(holding defendant was prejudiced because his counsel gave him erroneous advice that led him to proceed to trial, thus precluding him from receiving three-level reduction for acceptance of responsibility). However, it is also reasonable to conclude that Gonzalez could have received the same sentence he actually received under the plea agreement. *See Grammas*, 376 F.3d at 438-39 (remanding § 2255 petition to district court because it was unclear whether petitioner had he decided to plead guilty rather then go to trial would have received a lesser sentence).

Because the Court cannot determine on the basis of the instant record either deficiency or prejudice, the Court must hold an evidentiary hearing to resolve these issues. *See* U.S.C.S. SEC. 2255 PROC. R. 8; *see also United States v. Herrera*, 412 F.3d 577, 582 (5th Cir. 2005)(noting evidentiary hearing would assist district court in determining whether petitioner relied on attorney's alleged misrepresentations in rejecting government's plea offer); *Grammas*, 376 F.3d at 438-39.

## III. CONCLUSION

For the reasons enumerated above, the Government's motion is GRANTED in part. It is granted as to the issues raised and addressed in Parts II.B., C., D., and E of this Order. Gonzalez's motion is DENIED in part as to the issues raised in the aforementioned sections. All other allegations raised by Gonzalez but not addressed by the Court are also DENIED.[4]

---

[4] For example, in the instant motion Gonzalez makes several allegations relating to appeal. Those allegations are, however, foreclosed by this Court's order dated August 2, 2006. [Crim. Dkt. No. 71].

As to the remaining issue, the Court will hold an evidentiary hearing on Gonzalez's claim that his counsel did not inform him regarding the Government's plea offer.  The scope of the hearing will be limited to this issue alone.  The evidentiary hearing is set for <u>May 3, 2007, at 2:00 p.m. in Courtroom 3B</u>, 1300 Victoria, Laredo, Texas, 78040.  All interested parties must attend.

Gonzales is entitled to be represented by counsel at the hearing.  *See* U.S.C.S. Sec. 2255 Proc. R. 8(c)("If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a moving party . . . .").  Because Gonzalez is not represented by counsel, [Dkt. No. 5], one will be appointed for him.  Therefore, in order to assist Gonzalez at the hearing, <u>Oscar Vela</u> is appointed to represent Gonzalez in the resolution of the unresolved issue.

IT IS SO ORDERED.

Signed this <u>26th</u> day of March 2007, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**To Insure Proper Notice, Each Party Who Receives This Order Shall Forward a Copy of it to Every Other Party And Affected Non-party Even Though They May Have Been Sent One by The Court.**